IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KENNETH THUNDERBIRD,                                    CV.08-1404-PK

                        Plaintiff,                    FINDINGS AND
                                       RECOMMENDATION

v.

OREGON STATE DEPARTMENT OF
CORRECTIONS Employees, Agents,
Agencies, Public Entity; MAX WILLIAMS,
Director of Oregon Department of Corrections;
DON MILLS, Superintendent of Two Rivers
Corrections; TWO RIVERS CORRECTIONAL
INSTITUTION; MARK NOOTH, Superintendent
of Snake River Corrections; SNAKE RIVER
CORRECTIONAL INSTITUTION;
STEVE SHELTON, Medical Director of
Oregon Department of Corrections;
GULICK, Medical Provider; G. LYLTES,
Medical Provider; HEALTH SERVICES
OF SNAKE RIVER CORRECTIONAL
INSTITUTION; HEALTH SERVICES
OF TWO RIVERS CORRECTIONAL
INSTITUTION; WHILAN, Nurse;
JOHNSTON, Nurse; S. JOHNSTON, Nurse;
HAYS, Nurse; SIMMONS, Nurse;
HOLLOPETER, Security Officer;
McNIT, Security Officer; HENSLEY, Security

Officer; STRINGER, Security Officer; ADAMS,
Security Officer; PATRICK, Security Officer;
WANUS, Security Officer; POWELL, Security
Officer; MERRIT, Staff Member;
HUNT, Staff Member; KUDRAM, Staff Member;
GROSS, Staff Member; DEAN, Staff Member;
BULISON, Staff Member; and WILSON, Staff Member,

                        Defendants.

PAPAK, Magistrate Judge:

Plaintiff Kenneth Thunderbird, an inmate appearing *in forma pauperis*,[1] filed this action

on November 24, 2008.  The current pleading names as defendants the Oregon State Department

of Corrections ("ODOC"), Max Williams, Don Mills, Two Rivers Correctional Institution

("TRCI"), Mark Nooth, Snake River Correctional Institution ("SRCI"), Steve Shelton, Gulick, G.

Lyltes, Health Services of SRCI, Health Services of TRCI, Whilan, Johnston, S. Johnston, Hays,

Simmons, Hollopeter, McNit, Hensley, Stringer, Adams, Patrick, Wanus, Powell, Merrit, Hunt,

Kudram, Gross, Dean, Bulison, and Wilson (collectively "Defendants"), and alleges claims for

relief under the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act of

1990 ("ADA"), and 42 U.S.C. § 1983.  Plaintiff seeks, among other things, declaratory and

injunctive relief, reimbursement for allegedly confiscated property, and monetary damages.

Presently before the court are defendants' motion to dismiss and Thunderbird's motions

for an expert witness, motion to compel, and motion for default.   For the reasons discussed

below, the motion to dismiss should be granted in part and denied in part.  Thunderbird's

---

[1] Although Thunderbird applied for leave to appear *in forma pauperis* at the time he filed
his complaint, his application was initially denied.  On reconsideration, the court granted the
application on March 12, 2009.

motions should be denied.

## LEGAL STANDARD

For purposes of a motion to dismiss, the court views the complaint in the light most favorable to the plaintiff and must generally accept as true the facts alleged. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031 (1981). "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't.,* 839 F.2d 621, 623 (9th Cir. 1988) (citation omitted). *Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972).

## BACKGROUND

Thunderbird was first admitted to ODOC custody on October 16, 1996, and for the first few years, he was mostly housed at the Oregon State Correctional Institution ("OSCI"). (Reynolds Decl. (# 12) at ¶ 4, Ex. 1, pp. 1, 8-10.) On January 26, 1999, he was moved to SRCI, where he remained until July 17, 2008. (*Id.* at pp. 3-8.) He was housed at TRCI from July 17, 2008, until June 18, 2009. (*Id.* at pp. 2-3.) On June 18, 2009, he was moved back to OSCI, where he is currently housed. (*Id.* at p. 2.)

Thunderbird filed this action on November 24, 2008. His original complaint was more than 250 single-spaced handwritten pages, alleging 37 claims for denial of medical care, failure to accommodate his disabilities, denial of benefits under the ADA, retaliation, denial of mail service, and denial of access to courts. On June 8, 2009, in response to the court's March 12, 2009, order dismissing the original complaint and requiring him to make a more definite statement, Thunderbird filed two documents, titled an "Amended Complaint" and a

Page 3 - FINDINGS AND RECOMMENDATION

"Supplemental Complaint." On June 26, 2009, he filed a third document, titled "Joinder of Claims." Together, these documents amounted to nearly 100 handwritten pages.

On April 19, 2010, defendants filed a motion to dismiss Thunderbird's claims for failure to state a claim upon which relief could be granted. Prior to filing the motion to dismiss, defendants asked for several extensions of time to respond to the second amended complaint, on the basis that they needed additional time to determine the identity of all the named defendants and to obtain a request for defense from each.

On October 5, 2010, while the motion to dismiss was pending, Thunderbird filed a document titled his "Second Amended Complaint" without first seeking leave of court. In an order dated November 1, 2010, Judge Haggerty adopted this court's recommendation that the second amended complaint be construed as properly filed and that defendants' motion to dismiss be denied as moot with leave to refile as warranted. Defendants filed the current motion to dismiss on January 24, 2011.

On February 7, 2011, the court sent a request for waiver of service to the Oregon Department of Justice, listing all the defendants named in the second amended complaint. In a minute order dated March 4, 2011, the court granted defendants' motion to stay discovery pending resolution of the motion to dismiss and the submission of the updated waiver of service. In response to the stay, Thunderbird filed a document that stated, among other things, that he would voluntarily excuse Bulison from the lawsuit and provided additional information regarding Simmons' identity. (*See* #123 at ¶¶ 5-6.)

On March 9, 2011, defendants requested an extension of time to review Thunderbird's response to their motion to dismiss and file a reply. Counsel noted that they could not determine

Page 4 - FINDINGS AND RECOMMENDATION

the identity of Bulison and Simmons, despite their best efforts. (Hallman Decl. (#125) ¶ 5.) On

April 5, 2011, counsel filed waivers of service on behalf of all defendants except G. Lyltes,

Simmons, Patrick, Merrit, Gross, and Bulison. On April 27, 2011, counsel filed a waiver of

service on behalf of defendant G. Lyltes. In the reply, counsel clarified that they do not represent

named defendants Simmons, Patrick, Merrit, Gross, or Bulison. (Reply (#137) at 2.)

## ANALYSIS

Defendants move for partial dismissal based on Thunderbird's failure to state a claim

under Fed. R. Civ. P. 12(b)(6), based on several theories: (1) some of the claims occurred

outside the statute of limitations, (2) the claims for declaratory and injunctive relief are moot, (3)

Thunderbird failed to state any claim for a violation of his religious rights, and (4) many of the

defendants are not proper parties to certain claims. Defendants also move for partial dismissal

because, for some of his claims, Thunderbird failed to exhaust his administrative remedies as

required by the Prison Litigation Reform Act ("PLRA"). Thunderbird brings several motions

centered around discovery issues and proper service of defendants.

## I. Motion to Dismiss

### A. Failure to State a Claim

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

must contain more than a "formulaic recitation of the elements of a cause of action;" specifically,

it must contain factual allegations sufficient to "raise a right to relief above the speculative

level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "The pleading must contain

something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action." *Id.* (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND

Page 5 - FINDINGS AND RECOMMENDATION

PROCEDURE § 1216, pp. 235-236 (3d ed. 2004)); *see also* Fed. R. Civ. P. 8(a).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler,* 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied*, 454 U.S. 1031 (1981).

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972). Specifically, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *See Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987). Before dismissing a *pro se* complaint, the court must, in many circumstances, instruct the *pro se* litigant as to the deficiencies in the complaint and grant leave to amend. *See Eldridge v. Block,* 832 F.2d 1132, 1136 (9th Cir. 1987). Nevertheless, a *pro se* plaintiff's claims may be dismissed where it appears beyond doubt that the plaintiff can prove no set of facts in support that would entitle him to relief. *Barrett v. Belleque,* 544 F.3d 1060, 1061 (9th Cir. 2008).

### 1. Timeliness

Thunderbird's lengthy second amended complaint appears to allege that during his many

years in ODOC custody, he has been denied access to services and programs based upon his disability,[2] that the facilities are not in compliance with the ADA, and that he was subject to numerous incidents of allegedly inadequate and discriminatory medical care. He brings these claims pursuant to § 1983, Title II of the ADA, and the Rehabilitation Act of 1973. It is well-settled that because § 1983 does not contain a specific statute of limitations for constitutional torts, federal courts use the analogous state statute for personal injury actions. *See Wilson v. Garcia,*, 266 (1985). In Oregon, the statute of limitations for personal injury actions is two years. O.R.S. 12.110(1); *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989). This court has applied the two-year personal injury statute of limitations to ADA and Rehabilitation Act claims. *Plasencia v. Carnevale*, Civil No. 06-1426-AC, 2008 WL 2354423, at *2-3 (D. Or. June 6, 2008).

"A federal claim accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Bagley v. CMC Real Estate Corp.,* 923 F.2d 758, 760 (9th Cir. 1991) (internal citation and quotation omitted). Federal law also controls when an action "commences" for the purposes of the statute of limitations. *Sain v. City of Bend*, 309 F.3d 1134, 1136 (9th Cir. 2002). Under Fed. R. Civ. P. 3, a § 1983 action commences in federal district court for purposes of the statute of limitations when the complaint is filed. *Id.* at 1138. For statute of limitations purposes, Thunderbird filed his original complaint on November 24, 2008, so any allegations that occurred prior to November 24, 2006, are time barred.

---

[2] Thunderbird appears to allege that he is disabled on the basis that he is 80 years old, has mobility impairments, is blind, diabetic, and paraplegic. (Second Amended Complaint ("SAC") (#90) ¶ 5, p. 75.)

Page 7 - FINDINGS AND RECOMMENDATION

The second amended complaint, despite spanning over 70 pages and naming 31 defendants, has actually significantly narrowed the factual allegations from the original filing which was nearly 300 pages long. Despite this fact, the operative complaint still contains many references to specific events that allegedly occurred more than two years before the filing date. For example, Thunderbird spends a significant amount of time detailing allegations regarding confiscation of his boots and socks in 2001 (SAC ¶¶ 67-86), confiscation of other medical devices in 2003 (¶ 88), sanctions in 2004 for failing to properly lock his cell, even though his disability prevents him from operating the lock (¶ 101), and the alleged improper management of his medications in 2005 (¶¶ 126-27). To the extent that Thunderbird's claims are based on discrete factual allegations that fall outside the statute of limitations, or on any other events that allegedly took place more than two years prior to the filing of the complaint on November 24, 2008, these claims are untimely.

Thunderbird appears to assert that the events occurring outside the two-year statute of limitations are ongoing and that the continuing violations theory allows those claims to survive. The continuing violations doctrine involves "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices." *SissetonWahpeton Sioux Tribe v. United States,* 895 F.2d 588, 597 (9th Cir.), *cert. denied,* 498 U.S. 824 (1990). "The doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." *Flowers v. Carville,* 310 F.3d 1118, 1126 (9th Cir. 2002) (internal quotation omitted). "[T]he statute of limitations runs separately from each discrete act" and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *RK Ventures,*

Page 8 - FINDINGS AND RECOMMENDATION

*Inc. v. City of Seattle,* 307 F.3d 1045, 1061 (9th Cir. 2002) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 133 (2002)).  "[M]ere continuing impact from past violations is not actionable." *Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotations and citation omitted).  In Oregon, the continuing violations doctrine "is based on the concept that recovery is for the cumulative effect of wrongful behavior, not for discrete elements of that conduct." *Smith v. Myers,* Civil No. 06-1847-BR, 2007 WL 2816204, at * 4 (D. Or. September 25, 2007) (citing *Barrington v. Sandburg,* 164 Or.App. 292, 296, 991 P.2d 1071, 1073 (1999)).  "When a plaintiff alleges harm from each discrete act in a series, the continuing tort theory does not apply." *Id.*

The policies that Thunderbird challenges as longstanding, continuing violations are those that pertain to the accessibility of the ODOC facilities for people with disabilities as well as the alleged refusal of ODOC staff to provide adequate medical care and access to rehabilitation services for disabled inmates. (*See* SAC at ¶¶ 39, 42-45.)  While noting that these allegedly illegal policies have been in place for a long time, Thunderbird goes on to allege numerous specific instances where his rights were violated as result of these policies.  As discussed above, some of those allegations fall outside the statute of limitations.  However, this is not a case where there is no single incident that falls within the statutory period that can be identified as the cause of the harm, thereby invoking the continuing violations doctrine.  In fact, as discussed more fully below, Thunderbird has alleged numerous individual incidents that allegedly occurred during the relevant time period.  Therefore, those allegedly discriminatory acts that occurred outside the actionable time period are barred, regardless of whether they are related to those allegations that are timely.  Those allegations that occurred prior to November 24, 2006, are barred by the statue of limitations and should be dismissed with prejudice.

### 2. Declaratory and Injunctive Relief

Defendants assert that because Thunderbird no longer resides at the correctional

institution where the alleged constitutional and statutory violations occurred, this moots his

claims for declaratory and injunctive relief.  During the relevant times underlying the complaint,

Thunderbird was housed at TRCI and SRCI.  (Reynolds Decl. Ex. 1 at 1-10.)  On June 18, 2009,

subsequent to filing this action, he was transferred to OSCI.  (*Id.* at 2.)  It is well established in

the Ninth Circuit that when an inmate is transferred to another institution, his claim for

declaratory and injunctive relief becomes moot to the extent that the claim challenges prison

conditions at that particular facility.  *Dilley v. Gunn,* 64 F.3d 1365, 1368 (9th Cir. 1995); *see also*

*Low v. Stanton,* Civil No. S-05-2211, 2009 WL 161080, at *4 (E.D. Cal. January 22, 2009)

(summarizing cases).  The only exception to this rule is when the "case is capable of repetition

yet evading review."  *Id.*  This exception applies when "(1) the challenged action was in its

duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a

reasonable expectation that the same complaining party will be subjected to the same action

again."  *First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 774 (1978); *Dilley*, 64 F.3d at 1368-

69.

Because Thunderbird is now incarcerated at OSCI, his claims for declaratory and

injunctive relief for conduct that allegedly occurred at TRCI and SRCI were indeed rendered

moot by his transfer.  This action does not meet the first prong of the mootness exception

because it cannot be characterized as having a short duration.  Thunderbird seeks declaratory and

injunctive relief on the grounds that the facilities are not in compliance with the ADA.  "This

case neither challenges a court order which, by its own terms, expires in a few days nor raises

questions which are mooted by the termination of a nonjudicial activity that is of short duration."
*Wiggins v. Rushen,* 760 F.2d 1009, 1011 (9th Cir. 1985).  Moreover, courts routinely review
claims by inmates alleging that the conditions of their confinement violate federal law,
demonstrating that these cases do not generally "evade review."  *See Becker v. Oregon,* 170 F.
Supp. 2d 1061 (D. Or. 2001) (similar facts).  Because the action does not satisfy the first prong of
the mootness exception, the court need not decide whether there is a reasonable expectation that
Thunderbird could be subjected to the same action again if he were re-transferred to TRCI or
SRCI.

While Thunderbird requests mostly declaratory and injunctive relief in connection with
his prison conditions claims, he also requests monetary damages for the alleged violations of his
rights, in the form of reimbursement for replacement of various medical devices, as well as
general compensatory and punitive damages.  (SAC ¶¶ 186-188.)  Therefore, his claims should
be dismissed only to the extent that they seek declaratory and injunctive relief.  Thunderbird
should be  permitted to pursue monetary damages on those claims that survive the current
motion.

### 3. Religious Freedom Claims

While Thunderbird's second amended complaint contains only three claims for relief,
brought under § 1983, the ADA, and the Rehabilitation Act, he makes some reference to
violations of his religious rights and may also intend to bring claims under the First
Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons
Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000 *et seq*.  (SAC ¶ 3.)  Defendants assert that if
Thunderbird intends to bring statutory and constitutional claims for violation of his religious

Page 11 - FINDINGS AND RECOMMENDATION

rights, he has failed to allege sufficient facts to state a claim under either the First Amendment or RLUIPA.

"Prisoners 'do not forfeit all constitutional protections by reason of their conviction and confinement in prison.'" *Shakur v. Schriro,* 514 F.3d 878, 883 (9th Cir. 2008) (quoting *Bell v. Wolfish,* 441 U.S. 520, 545 (1979)). "Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Id.* at 883-84 (quoting *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987)). "'Lawful incarceration[, however,] brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* (quoting *O'Lone,* 482 U.S. at 348).

The Supreme Court has noted "RLUIPA . . . protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson,* 544 U.S. 709, 721 (2005). Thunderbird "bears the initial burden of going forward with evidence to demonstrate a *prima facie* claim," that the government's action "constitute[s] a substantial burden on the exercise of his religious beliefs." *Warsoldier v. Woodford,* 418 F.3d 989, 994 (9th Cir. 2005). A defendant may overcome the *prima facie* claim by providing evidence that "the regulation serves a compelling interest and is the least restrictive means of achieving that interest." *Shakur,* 514 F.3d at 889.

In order to state a claim under the First Amendment or RLUIPA, Thunderbird must have made a request or allege that defendants have a policy in place that implicates his religious rights. Here, Thunderbird has not included any facts relating to his religious practice, much less that

Page 12 - FINDINGS AND RECOMMENDATION

defendants placed a burden on this practice.  In his response, Thunderbird references several exhibits in support of his argument that defendants burdened his right to freely exercise his religion.  (Pl's Response (#121) at p. 7, Exs. A-E.)  However, each of these exhibits are merely copies of the relevant rules and regulations governing religious exercise; nowhere does he allege any actual burden imposed on his ability to freely exercise his religion while in ODOC custody.

The court notes that Thunderbird includes a copy of an inmate discrimination complaint that alleges that on January 21, 2009, officer Wanus confiscated a prayer feather attached to Thunderbird's medicine bag, thereby interfering with his right to practice his religion.  (Pl's Response, Ex. G).  There is no evidence that Thunderbird exhausted ODOC's two-level discrimination complaint and appeal process, as required by the Oregon Administrative Rules ("OAR") and discussed more fully below.  Regardless, the PLRA requires Thunderbird to fully exhaust his administrative remedies prior to filing suit. *McKinney v. Carey,* 311 F.3d 1198, 1200 (9th Cir. 2002) (per curiam).  Since Thunderbird filed suit in November 2008, he could not have possibly exhausted his remedies for an event that occurred two months later.

To the extent that Thunderbird alleges a violation of his constitutional or statutory religious rights based on the alleged confiscation of his prayer feather in January 2009, the claim should be dismissed without prejudice.  Accordingly, Thunderbird has failed to state a claim for a violation of his constitutional or statutory religious rights.  To the extent that Thunderbird's intends to bring claims for violation of his religious rights, those claims should be dismissed without prejudice.

### 4.  ADA and Rehabilitation Act Claims

Thunderbird brings claims against all defendants under § 504 of the Rehabilitation Act

(First Claim) and Title II of the ADA (Second Claim) regarding the accessibility of ODOC

facilities for people with disabilities as well as the alleged refusal of ODOC staff to provide

adequate access to rehabilitation services for disabled inmates.  (SAC ¶¶ 162-79.)  However, it is

well established that individual defendants may not be sued in their individual capacities under

the Rehabilitation Act or the ADA because neither statute provides for individual liability.

*Becker,* 170 F. Supp. 2d at, 1066-67.  Accordingly, Thunderbird's ADA and Rehabilitation Act

claims brought against the individually named defendants acting in their individual capacity,

should be dismissed.[3]

### 5.  § 1983 Claim

#### a.  State Entities

Thunderbird's Third Claim, brought pursuant to § 1983, alleges that defendants have

subjected him to inadequate and discriminatory medical care.  (SAC ¶¶ 180-85.)  He brings suit

against numerous individual ODOC employees acting in their personal and official capacities,

and several ODOC entities: TRCI, SRCI, and the TRCI and SRCI Health Services Departments.

Thunderbird explicitly excludes ODOC as a defendant on this claim.  (*Id.* at ¶¶ 182-83.)

Defendants assert this claim must be dismissed because the defendants are not "persons" for

purposes of § 1983, and because they have not waived their Eleventh Amendment immunity.

To state a § 1983 claim, Thunderbird must allege facts showing the deprivation of a right,

---

[3] To be clear, the following named defendants remain on the ADA and Rehabilitation Act claims: ODOC, TRCI, SRCI, Health Services of TRCI and SRCI, and the following defendants acting only in their official capacity: Williams, Mills, Nooth, Shelton, Gulick, G. Lyltes, Whilan, Johnston, S. Johnston, Hays, Simmons, Hollopeter, McNit, Hensley, Stringer, Adams, Patrick, Wanus, Powell, Merrit, Hunt, Kudram, Gross, Dean, Bulison, and Wilson. However, as discussed below, Thunderbird still must fully exhaust his claims in order for these claims to survive.

guaranteed by the United States Constitution or by a federal law by a "person" acting under color of law. *L.W. v. Grubbs,* 974 F.2d 119, 120 (9th Cir. 1992), *cert. denied,* 508 U.S. 951 (1993). State entities and state officials are not "persons" against whom § 1983 actions may be sought in federal court. *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1443 (9th Cir. 1989); *Leer v. Murphy,* 844 F.2d 628, 632 (9th Cir. 1988). State prisons are considered state agencies for Eleventh Amendment purposes. *See Allison v. California Youth Authority,* 419 F.2d 822, 823 (9th Cir. 1969).

Eleventh Amendment immunity may be waived if Congress has abrogated the state's immunity, or the state has expressly consented to waive it. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 64-68 (1996). Although there are some exceptions, the Supreme Court has made clear that Congress did not abrogate states' Eleventh Amendment immunity when it enacted § 1983. *Quern v. Jordan,* 440 U.S. 332, 341 (1979); *Will v. Dep't of State Police,* 491 U.S. 58, 69-70 (1989)

Here, Thunderbird brings his § 1983 claim against TRCI, SRCI, the TRCI and SRCI Health Services Departments, and numerous ODOC employees acting in their official capacities.[4] These defendants are not "persons" for purposes of a § 1983 claim, and unless Oregon expressly consented to suit and waived its immunity, Thunderbird's suit must be dismissed as to these

---

[4]  The court notes that while the Eleventh Amendment prevents state officials acting in their official capacity from being sued for monetary damages, they may be sued for prospective injunctive or declaratory relief under § 1983 because such actions are "not treated as actions against the state." *Will,* 491 U.S. at 71 n. 10 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985) and citing *Ex Parte Young,* 209 U.S. 123, 159-60 (1908)) (injunctive relief); *Walsh v. Nevada Dep't of Human Resources,* 471 F.3d 1033, 1036 (9th Cir. 2006) (declaratory relief). As discussed above, Thunderbird's claims for declaratory and injunctive relief are moot, so the court need not decide whether he intends to bring claims for such relief against the individual defendants in their official capacity.

Page 15 - FINDINGS AND RECOMMENDATION

defendants.

There is no evidence in the record supporting Thunderbird's position that Oregon has waived immunity from action brought against it in federal court. In support of his argument that the state defendants have consented to suit, Thunderbird includes a letter from the Oregon Department of Administrative Services' Inmate Claims Unit, dated May 13, 2004,[5] denying Thunderbird's claims while incarcerated at SRCI. (Pl's Response, Ex. Q.) The letter denies Thunderbird's claims regarding his medical care and access to mail, and ends with the sentence, "[i]f you choose to pursue your claim, the Department of Corrections is prepared to proceed to litigation." (*Id.*) Thunderbird seems to think that this amounts to waiver and consent to suit. However, this is not the type of waiver contemplated by the Eleventh Amendment. The Supreme Court has said that it will "find waiver only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan,* 415 U.S. 651, 673 (1974). The letter submitted by Thunderbird denying one of his many grievances is not such an unequivocal waiver.

Therefore, Thunderbird's § 1983 claim against TRCI, SRCI, and the TRCI and SRCI Health Services Departments is barred by the Eleventh Amendment and these entities should be dismissed. Thunderbird does not bring suit against ODOC on this claim, but if he had, ODOC would be also be dismissed on Eleventh Amendment grounds. His § 1983 claim for monetary relief against the individual defendants sued in their official capacity should also be dismissed.

/ / /

---

[5] As discussed above, any claims that occurred prior to November 24, 2006, are time-barred.

### b. Individual Defendants

As discussed above, Thunderbird names many individual ODOC employees as defendants in their official and individual capacity. While the § 1983 claim against the individual employees sued in their official capacities should be dismissed because they are not "persons" for purposes of § 1983, these same employees may be properly sued in their personal capacities "as persons" within the meaning of § 1983. *See Hafter v. Melo,* 502 U.S. 21, 30 (1991).

As a general rule, "liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied,* 525 US 1154 (1999). Accordingly, "state officials are not subject to suit under § 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights." *King v. Atiyeh,* 814 F.2d 565, 568 (9th Cir. 1987). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren,* 152 F.3d at 1194. There is no vicarious liability under § 1983. *Id.* "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to prevent them." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).

Thunderbird's lengthy second amended complaint details various problems he has experienced while in ODOC custody. While not all the allegations occurred within the statutory period, Thunderbird has set forth allegations that most all of the named individuals personally took action that allegedly violated his rights. Thunderbird sets forth only three claims for relief, but alleges numerous "events" that span nearly 50 pages and which form the factual basis of his

claims.  While Thunderbird makes allegations related to several individuals not named as

defendants, the court addresses only those  factual allegations that pertain to those named as

defendants in the second amended complaint.

 While housed at SRCI, Thunderbird makes the following factual allegations:

> (1) Officers Stringer and Adams confiscated and destroyed a pair of
> prosthetic boots while Thunderbird was housed in segregation on or about
> September 11, 2000.  (*See SAC* at ¶¶ 67-73.)

> (2) Once Thunderbird was released from segregation on or about October
> 10, 2001, he was released without proper socks or shoes, as part of the
> facility's practice of not supplying inmates with proper fitting clothing or
> footwear.  Once he was authorized to wear footwear, he alleges that
> sometime in 2003 staff member Bulison interfered with his receipt of
> footwear prescribed to him by ODOC physicians.  (*Id.* at ¶¶ 74-86.)

> (3) On or about November 8, 2003, officer Hollopeter improperly
> confiscated several medically-necessary devices, including a wheelchair
> cushion.  In connection with this event, staff member Kudram failed to
> properly investigate Thunderbird's grievances, staff member Gross acted
> as judge in the matter without being qualified, and officer Hensley
> prematurely destroyed the cushion.  (*Id.* at ¶¶ 87-102.)

> (4) Dr. Gulick inappropriately prescribed a blood thinning medication,
> which caused Thunderbird to become violently ill and be transported by
> ambulance to the hospital, where he "died" and had to be revived.  Upon
> his return to SRCI, Dr. Gulick did not permit him to stay in the infirmary
> and instead placed him in a non-ADA complaint cell that had no handrails
> and an inaccessible toilet.  (*Id.* at ¶¶ 103-116.)

> (5) Dr. Gulick refused to reasonably accommodate Thunderbird's requests
> for sweat pants to wear while sitting in the wheelchair 17-18 hours a day.
> Instead, he had to wear jeans, which caused continuous irritation of his
> testicles.  (*Id.* at ¶¶ 117-118.)

> (6) Dr. Gulick again inappropriately prescribed medication that caused
> Thunderbird to have a "blood hemorrhage" and was taken by ambulance to
> an emergency room where he again "died."  When he returned, he was
> required to lay on dirty blankets covering his bedding so that the blood
> would not stain the sheets, he was refused a shower, and was unable to use
> the toilet.  Dr. Gulick ordered a "shaky fold up card table with a toilet lid

mounted on top with no hand rails" to help Thunderbird access the toilet, but the table was not helpful. When he complained, Dr. Gulick sent him to segregation, where the cells and showers are not ADA accessible, causing further injury. (*Id.* at ¶¶ 119-27.)

(7) On or about February 14, 2008, Dr. Gulick ordered three officers to confiscate Thunderbird's medically-necessary tinted eyeglasses. Dr. Gulick did not perform an examination to determine if Thunderbird needed the glasses and did not investigate whether he had a prescription for them. Drs. Gulick and Lyltes were not responsive to his grievances, and it was over a year before the glasses were returned, "broken beyond repair." (*Id.* at ¶¶ 128-129.)

(8) At some point, Thunderbird received an internal facility document demonstrating that Dr. Gulick ordered the confiscation of his eyeglasses (Ex. 39). Thunderbird was immediately transferred to TRCI in retaliation for his receipt of the document. (*Id.* at ¶¶ 129-30.)

While housed at TRCI, Thunderbird alleges the following:

(1) In retaliation for filing so many grievances while at SRCI, nurses Whilan, Johnston, S. Johnson, Hays, and Simmons, intimidated and abused plaintiff by denying him medical care and placing him in segregation. Specifically, for approximately nine months, they denied him insulin because he did not have eyeglasses to inject it himself and they would not inject it for him. (*Id.* at ¶¶ 131-37.)

(2) Even after Dr. Lyltes ordered medical staff to administer Thunderbird's insulin injections, on August 18, 2008, nurses Whilan, Johnston, S. Johnson, Hays, and Simmons, still refused, causing Thunderbird to lose his eyesight. (*Id.* at ¶¶ 138-40.)

(3) Nurses Whilan, Johnston, S. Johnson, and Simmons refused to treat Thunderbird's diabetes and conspired with officers Powell and Wanus to confiscate Thunderbird's socks, causing him to be punished for failing to wear socks. Nurse Simmons and officers Powell and Wanus would not issue socks that fit or allow him to go without socks, knowing that his circulation would be affected, his feet would swell, and he would be in pain. (*Id.* at ¶¶ 85, 142.)

(4) Nurses Whilan, Johnston, S. Johnson, Hays, and Simmons refused to administer Thunderbird's insulin, despite knowledge that his vision was deteriorating. They gave him a "direct order" not to return to test his blood sugar or receive glucose insulin. Even though they refused to inject

Page 19 - FINDINGS AND RECOMMENDATION

the insulin, they would inject him with tuberculosis, hepatitis, and flu vaccines. (*Id.* at ¶¶ 143-44.)

Based on the above, Thunderbird has alleged sufficient alleged sufficient personal involvement for his § 1983 claim against the following individually named defendants sued in their personal capacity: Drs. Gulick and G. Lyltes; nurses Whilan, Johnston, S. Johnston, Simmons, and Hays; officers Hollopeter, Hensley, Stringer, Adams, Wanus, and Powell; and staff members Bulison, Gross, and Kudram. However, the claims against Adams, Stringer, Hollopeter, Bulison, Kudram, Gross, and Hensley are time barred because the factual events involving them occurred before November 24, 2006. They should be dismissed.

The complaint does not contain specific factual allegations for all the named defendants. The complaint is completely devoid of any allegations of personal involvement by officer Patrick and staff members Merrit, Hunt, and Wilson. Their names appear in the case caption, but there is no subsequent mention of them anywhere in the body of the complaint. The allegations against officer McNit and staff member Dean are minimal and include no specific facts whatsoever. They are lumped together with a string of other defendants against whom Thunderbird makes only the conclusory allegation that they acted under color of law and interfered with Thunderbird's medical treatment. (SAC ¶¶ 17-18.) Later in the complaint, Thunderbird includes specific factual allegations for many of the other defendants whose names appear in these paragraphs, but not for McNit and Dean. Consequently, Patrick, Merrit, Hunt, Wilson, McNit, and Dean should be dismissed.

Thunderbird's allegations directed toward Williams, Mills, Nooth, and Shelton appear to be made not against them personally, but against them in their capacity as administrators and supervisors. Each time their names appear, it is based on their enforcement of the policies upon

Page 20 - FINDINGS AND RECOMMENDATION

which Thunderbird bases his complaint or in connection with their role in training or supervising

the individual defendants who took the allegedly illegal action against Thunderbird. (*See SAC* at

¶¶ 7-11, 49-50, 53, 99, 103, 109, 121, 123, 159, 145, 156, 159, 161 (as administrators), 85, 95-

96, 102-03, 117, 119-20, 126, 129, 132-33, 136-39, 142-43 (as supervisors).)

To the extent that Thunderbird attempts to articulate a *Monell* claim against the

supervisory defendants, it is well established that there is no *respondeat superior* liability under

§ 1983. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 691 (1978)). Supervisory liability may only be imposed in an individual

capacity "if the supervisor participated in or directed the violations, or knew of the violations and

failed to act to prevent them." *Taylor*, 880 F.2d at 1045 (citing *Ybarra v. Reno Thunderbird*

*Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir.1984)). Thunderbird has failed to allege a

policy or custom pursuant to which defendants violated his rights, much less any personal

involvement of Williams, Mills, Nooth, or Shelton, in enforcing that policy. There are no

allegations of any actual personal involvement by Williams, Mills, Nooth, and Shelton, so they

should be dismissed.

In sum, Patrick, Merrit, Hunt, Wilson, McNit, and Dean should be dismissed because

Thunderbird has not made even general allegations necessary to support any claims against these

defendants. Williams, Mills, Nooth, and Shelton should be dismissed because Thunderbird has

not alleged that they were personally involved in the allegedly illegal actions taken against him

other than in their role as supervisors and administrators. However, Thunderbird has alleged

sufficient personal involvement against the following individually named defendants, sued in

their personal capacity: Gulick, G. Lyltes, Whilan, Johnston, S. Johnston, Hays, Simmons,[6] Wanus, and Powell.

### 7. Conclusion

Thunderbird has failed to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) for any allegations that occurred before November 24, 2006, for claims for declaratory and injunctive relief, and for a violation of his religious rights. Moreover, his ADA and Rehabilitation Act claims should be dismissed against the individual defendants sued in their individual capacity, and his § 1983 claim dismissed as to ODOC, TRCI, SRCI, the Health Services Departments of TRCI and SRCI, and against the individual defendants acting in their official capacity. Thunderbird has stated sufficient personal involvement on his § 1983 claim as to SRCI physician Gulick, TRCI physician Lyltes, TRCI nurses Whilan, Johnston, S. Johnston, Hays, and Simmons, and TRCI officers Wanus and Powell, acting in their personal capacity. However, as discussed next, only those claims that are properly exhausted will survive.

### B.  PLRA Exhaustion

Defendants contend that prior to bringing suit, Thunderbird failed to fully exhaust his administrative remedies for a number of allegations, and that those claims should be dismissed. The PLRA requires that a prisoner exhaust "available" administrative remedies before bringing an action. See 42 U.S.C. § 1997e(a); *Vaden v. Summerhill,* 449 F.3d 1047, 1050 (9th Cir. 2006). The PLRA requires exhaustion for all suits about prison life, "whether they involve general

---

[6] Simmons is named in the caption of the complaint, but has not yet been properly served because the Oregon Department of Justice, which represents the defendants, has not accepted service on her behalf. In a separate motion, Thunderbird asks the court enter default judgment with regard to those defendants that have not accepted service. That issue is addressed below.

circumstances or particular episodes." *Porter v. Nussle,* 534 U .S. 516, 532 (2002). As a result,

a prisoner must exhaust administrative remedies before bringing a claim under 42 U.S.C. § 1983,

the ADA or the Rehabilitation Act. *O'Guinn v. Lovelock Corr. Ctr.,* 502 F.3d 1056, 1061-62

(9th Cir. 2007).

The PLRA exhaustion requirement requires "proper exhaustion," which means

compliance with all deadlines "and other critical procedural rules." *Woodford v. Ngo,* 548 U.S.

81, 90 (2006). A prisoner must exhaust all available remedies, even if the remedies are not

"plain, speedy, and effective," and even if the prisoner seeks relief not available in grievance

proceedings, such as money damages. *Porter,* 534 U.S. at 524. Prison grievance deadlines are

precisely the type of "critical" procedural rules with which the PLRA requires compliance.

*Woodford,* 548 U.S. at 94-95.

Exhaustion is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 200-201 (2007).

Thus, defendants bear the burden of raising and proving the absence of exhaustion. *Wyatt v.

Terhune,* 315 F.3d 1108, 1119 (9th Cir.), *cert. denied,* 540 U.S. 810 (2003). Courts in the Ninth

Circuit treat exhaustion as a matter of abatement in an unenumerated Rule 12(b) motion to

dismiss. *Id.* The court may look beyond the pleadings and decide disputed issues of fact to

determine whether a prisoner has properly exhausted his administrative remedies. *Id.* at 1119-20.

If the court concludes that the prisoner has not exhausted the prison's administrative process, the

court should dismiss without prejudice. *Id.* at 1120.

When there is no presuit exhaustion, the court must dismiss without prejudice, regardless

of whether the prisoner exhausts all administrative remedies while the action is pending.

*McKinney,* 311 F.3d at 1200. Thunderbird asserts that he was required to exhaust his claims

Page 23 - FINDINGS AND RECOMMENDATION

prior to filing his second amended complaint on October 5, 2010, not prior to filing his initial

complaint on November 24, 2008. However, it is well settled in the Ninth Circuit that a claim is

"brought" for purposes of the PLRA on the date when the prisoner submits the complaint to the

court. *Vaden,* 449 F.3d at 1049-51. This is because a prisoner "may initiate litigation in federal

court only after the administrate process ends and leaves his grievances unredressed. It would be

inconsistent with the objectives of [the PLRA] to let him submit his complaint any earlier than

that." *Id.* at 1051. As discussed above, Thunderbird filed his complaint on November 24, 2008.

Therefore, any claims exhausted after that date must be dismissed without prejudice. *McKinney,*

311 F.3d at 1200.

Thunderbird alleges that defendants have violated his rights because the facilities are not

in compliance with the ADA, he was denied access to services and programs based on his

disability, and he was provided inadequate and discriminatory medical care. ODOC has two

separate avenues for which an inmate may seek administrate review of these issues, the three-

step grievance process and the two-step discrimination complaint process. Thunderbird took

advantage of both administrative processes, filing numerous grievances and discrimination

complaints.

Defendants assert that Thunderbird failed to pursue all available levels of administrative

review for many of the events that form the basis of this action. The record includes extensive

documentation of the various grievances and discrimination complaints filed by Thunderbird,

many of which are not related to the factual allegations that form the basis of the second

amended complaint. Therefore, the court will review whether Thunderbird exhausted the

available administrative procedure only for those events alleged in the second amended

Page 24 - FINDINGS AND RECOMMENDATION

complaint to have occurred prior to November 24, 2008. As discussed above, those events are: Dr. Gulick's adjustment of Thunderbird's medications, his request for sweat pants, the confiscation of his medically necessary eyeglasses and socks, and the medical staff's alleged refusal to inject his insulin. The court will first address those allegations that Thunderbird pursued through the grievance process, and whether those complaints were exhausted, before turning to whether he exhausted those allegations that were pursued through the discrimination complaint process.

### 1. Exhaustion of Grievances

#### a. ODOC Grievance Procedure

ODOC has established a three-level administrative review procedure for institutional grievances. The rules governing that procedure, *Inmate Communication and Grievance Review System* set forth in Chapter 291, Division 109 of the OAR, were revised on November 1, 2006. (Hicks Decl. (#114) at ¶ 5, Ex. 2.)[7] Inmates are informed of the grievance procedure at the time they arrive at the facility, as part of the required Admissions and Orientation class, and it is provided in the inmate handbook that each inmate receives upon admission. (*Id.* at ¶ 6.)

Inmates shall attempt to resolve disputes with staff through face-to-face verbal communication or in writing as their primary means of resolving disputes. (*Id.* at ¶ 6, Ex. 2 at 3.) If the initial communications do not resolve the dispute, inmates may file a written grievance using form CD-117. OAR 291-109-0140(1)(a); (Hicks Decl. at ¶ 7, Ex. 2 at. 3.) A grievance must be filed within 30 days of the incident or conflict. OAR 291-109-0150(2); (Hicks Decl. at ¶

---

[7] There are two Teresa Hicks declarations (docket ##113, 114), which are duplicates of each other. Because declaration #113, does not include the referenced exhibits, all citations are to declaration #114, which includes the exhibits.

8, Ex. 2 at 4.)  The grievance must include a complete description of the incident, action, or application of the rule being grieved, and inmates should attach copies of any documents referenced in the grievance.  OAR 291-109-0140(1)(b); (Hicks Decl. at ¶ 7, Ex. 2 at 3.)

If the inmate is not satisfied with the response to the written grievance, the inmate may appeal to the functional unit manager by filing a grievance appeal form with the grievance coordinator within 14 calendar days from when the grievance response was sent to the inmate. OAR 291-109-0170(1)(a-b); (Hicks Decl. at ¶ 10 Ex. 2 at 5-6.)  An inmate may appeal the functional unit manager's response by filing a grievance appeal form with the assistant director within 14 days from when the first grievance appeal response was sent to the inmate.  OAR 291-109-0170(2)(a-c); (Hicks Decl. at ¶ 11, Ex. 2 at 6.)  The assistant director's decision is final and is not subject to further review.  OAR 291-109-0170(2)(d).

### b.  Exhausted Grievances

### i.  Medication

Thunderbird's complaint includes factual allegations relating to two separate incidents where Dr. Gulick allegedly adjusted Thunderbird's medications, causing serious medical problems that resulted in his hospitalization.  (SAC ¶¶ 103-16, 119-27.)  He also takes issue with the allegedly inadequate medical care he received following these incidents.  (*Id.*)  While the complaint does not provide the dates that these events allegedly occurred, defendants have provided documentation of two similar incidents where Thunderbird filed grievances regarding changes in his medication that resulted in a serious medical emergency.

In February 2008, Plaintiff filed a grievance relating to the alleged reduction of Neurontin which caused a medical emergency on or about December 21, 2007 (Grievance No.

Page 26 - FINDINGS AND RECOMMENDATION

2008.02.020), and which was fully exhausted as of July 25, 2008.  (Hicks Decl. ¶¶ 25-30, Ex. 5 at 34-46.)  In April 2008, he filed a grievance regarding medical complications related to administration of Propranol on April 4, 2008 (Grievance No. 2008.04.002), and which was fully exhausted as of June 25, 2008.  (*Id.* ¶¶ 31-35, Ex. 5 at 47-55.)  The complaint does not allege that any defendants other than Dr. Gulick were involved in these incidents.  Accordingly, Thunderbird has exhausted the administrative appeal process for his claims against Dr. Gulick regarding the adjustment of his medications.

### ii.  Sweat Pants

Thunderbird also alleges that Dr. Gulick refused to reasonably accommodate his requests to wear sweat pants while sitting in a wheelchair 17-18 hours a day.  (SAC ¶¶ 117-18.)   While defendants do not directly address whether Thunderbird exhausted the grievance process for this complaint, a close review of the grievances currently in the record reveals that Thunderbird included this grievance along with his complaints regarding the December 2007 medical emergency caused by the reduction of his Neurontin medication.  (Grievance No. 2008.02.020; *See* Hicks Decl. Ex. 5 at 34, 40, 44, 46.)  As discussed above, this grievance was fully exhausted as of July 25, 2008.  (*Id.* ¶ 30, Ex. 5 at 34.)  Accordingly, Thunderbird has pursued all levels of administrative review with regard to his claim regarding Dr. Gulick's alleged denial of his request for sweat pants.

### iii.  Tinted Eyeglasses

Thunderbird alleges that on or about February 14, 2008, defendant Dr. Gulick ordered the confiscation of his approved  "RX tinted eye glasses." (SAC ¶¶ 128-29).  Defendants do not contest that Thunderbird fully exhausted this grievance process for this issue.  Instead they assert

that he has not alleged sufficient personal involvement by any of the named defendants.

Thunderbird indeed exhausted his administrative remedies regarding the confiscation of his eyeglasses, filing at least three fully exhausted grievances on this issue. (Grievance Nos. 2008.03.032, 2008.03.040, 2008.04.041; Hicks Decl.¶¶ 19-24, Ex. 5 at 1-33.) Each of those grievances include the allegation that Dr. Gulick ordered the confiscation of his eyeglasses. (*See Id.* at 14, 18, 21, 25.) Accordingly, Thunderbird's allegations relating to Dr. Gulick's alleged confiscation of his tinted eyeglasses are fully exhausted.

## 2. Exhaustion of Discrimination Complaints

### a. ODOC Discrimination Complaint Procedure

ODOC has established a two-level administrative review procedure for institutional discrimination complaints. The rules governing that procedure, *Inmate Discrimination Complaints,* set forth in OAR Chapter 291, Division 6, effective November 1, 1997. (Hicks Decl. at ¶ 12, Ex. 4.) "Any inmate who believes that he/she . . . is subjected to discrimination on the basis of . . . handicap, may themselves . . . file a written complaint" with the functional unit manager of the unit to which the inmate is assigned, within 180 days of the act of alleged discrimination. OAR 291-006-0015(1)(a), (2)(a); (Hicks Decl. at ¶¶ 13-14, Ex. 4, p. 2-3.)

The functional unit manager or his or her designee, shall, among other things, "conduct a prompt and thorough investigation of the complaint," and shall provide the inmate ODOC's findings in writing, within 90 days of the complaint being filed. OAR 291-006-0015(2)(b)(C-D); (Hicks Decl. at ¶¶ 14-15, Ex. 4, p. 3.) The response "shall state the reasons for the decision reached and shall include a statement that the inmate is entitled to further review and shall contain simple directions for obtaining such review." OAR 291-006-0015(2)(b)(D); (Hicks Decl.

at ¶ 15, Ex. 4, p. 3.)

If unsatisfied with the initial response, the inmate "shall be entitled to review by a person

or other entity, not under the supervision or control of the functional unit to which the inmate is

assigned. This review shall be processed from initiation to final disposition within 90 days," and

the inmate shall be provided with the results in writing. OAR 291-006-0015(2)(c); (Hicks Decl.

at ¶¶ 16, Ex. 4, p. 3.)

### b. Exhausted Discrimination Complaints

The record contains numerous discrimination complaints filed by Thunderbird, most of

which were filed in while he was housed at TRCI in 2009. (Hicks Decl. ¶¶ 62-63, Ex. 5 at 100-

156.) Because Thunderbird could not have exhausted the process for these complaints prior to

filing this lawsuit in November 2008, the court declines to address those complaints in any detail,

other than to note that at least one of these complaints relates to Thunderbird's allegation that

nurses Whilan, Johnston, S. Johnston, and Simmons conspired with officers Powell and Wanus

to confiscate Thunderbird's socks. (SAC ¶¶ 85, 142.) Based on the record currently before the

court, the only complaint or grievance relating to this issue was submitted in February 2009.

(Hicks Decl. Ex. 5 at 122.) Therefore, it is untimely and those allegations should be dismissed.

Only the following two complaints were filed in time, though neither was fully exhausted.

### i. Tinted Eyeglasses

In February 2008, Thunderbird filed a discrimination complaint alleging that Dr. Gulick

was discriminating against him based on his age, race, and disability. (Inmate Discrimination

Complaint No. DIS 2008-03-001; Hicks Decl. ¶¶ 59-60, Ex 5 at 92-95.) The complaint centered

upon Thunderbird's allegation that Dr. Gulick ordered security officers to confiscate his tinted

Page 29 - FINDINGS AND RECOMMENDATION

eyeglasses on February 14, 2008, and which also formed the basis of several fully exhausted

grievances discussed above. (*Id.*) On August 25, 2008, defendant Shelton responded to the

complaint, explaining the reasons the glasses were taken and concluding that the investigation

revealed that there was no evidence of discrimination. (*Id.* at 92.)   The letter informed

Thunderbird of the procedure for further review. (*Id.*)  Thunderbird did not request further

review. (Hicks Decl. at ¶ 60.)  Therefore, Thunderbird failed to fully exhaust his administrative

remedies with regard to discrimination complaint regarding the confiscation of his tinted

eyeglasses.

### ii. Insulin

After being transferred to TRCI, Thunderbird alleges that defendant nurses Whilan,

Johnson, S. Johnston, Simmons, and Hays repeatedly denied him insulin. (SAC ¶¶ 131-40, 43-

44.)  In August 2008, Thunderbird filed a discrimination complaint (Inmate Discrimination

Complaint No. D08-08-02), alleging that he was being discriminated against by TRCI health

services staff because they were refusing him insulin. (Hicks Decl. ¶ 61; Reynolds Decl. ¶ 8, Ex.

2, at  1-3.)  Thunderbird alleged that a nurse refused insulin on the basis that there was a note or

message signed by Dr. Lytle instructing medical staff not to supply Thunderbird with insulin at

any time. (Reynolds Decl. Ex. 2 at 3.)  As a remedy, Thunderbird requested that the nurses inject

him with his insulin. (*Id.*)  Defendant Mills, who was TRCI's Superintendent at the time,

responded, explaining the reasons for health services' decision that Thunderbird inject his own

insulin, and noting that he found nothing to support Thunderbird's claims of disability

discrimination. (*Id.* ¶¶ 9-12, Ex. 2, at 1.)  Mills also advised Thunderbird of the procedures to

seek further review of his complaint. *Id.*  Thunderbird did not request further review. (*Id.* ¶ 13.)

Consequently, he failed to completely exhaust the two-level discrimination complaint and appeal

process and his claim regarding denial of insulin should be dismissed without prejudice.[8]

### C. Conclusion

The case should  proceed on the following claims:

> (1)  Thunderbird's Eighth Amendment § 1983 claim against Dr. Gulick,
> sued in his personal capacity, based upon the following actions:
>
>> (A) his reduction of Neurontin in December 2007;
>>
>> (B) his prescription of Propranol in April 2008; and
>>
>> (C) his refusal to reasonably accommodate Thunderbird's requests
>> for sweat pants on or about February 2008.
>
> (2) Thunderbird's Eighth Amendment § 1983 claim against Dr. Gulick,
> sued in his personal capacity, based upon the deprivation, denial, or
> confiscation of his tinted eyeglasses in February 2008.

All remaining claims and defendants not previously dismissed as discussed above, should

be dismissed based on Thunderbird's failure to exhaust his administrative remedies prior to filing

suit on November 24, 2008.

## II. Thunderbird's Motions

### A. Expert Witness

On April 15, 2011, Thunderbird filed a motion for an expert witness (#133), seeking an

order by the court appointing an ADA expert, a diabetes expert, and an expert in the field of

---

[8] The court notes that Thunderbird submitted a similar grievance on July 31, 2008, alleging that the medical staff insisted he draw his own insulin even though he is blind. (Grievance No. 08-07-53; Pl's Response, Ex. V at 1-2.) However, Thunderbird was notified that due to the similarity between this grievance and discrimination complaint, the grievance would be withdrawn and the insulin issue addressed only through the discrimination complaint system. Because Thunderbird failed to completely exhaust the two-level discrimination complaint and appeal process, the court cannot consider the grievance process exhausted on this issue.

ophthalmology. Under Fed. R. Evid. 706, the court may appoint an expert witness on its own or

on a party's motion. The court has discretion to appoint an expert, where an expert could provide

the court with helpful information or assist in evaluating complex evidence. *McKinney v.*

*Anderson*, 924 F.2d 1500, 1511, *vacated on other grounds, Helling v. McKinney*, 502 U.S. 903

(1991). The issues in this case are not particularly complex, as they center upon the quality of

Thunderbird's medical treatment and conditions of confinement while in ODOC custody.

Thunderbird has presented nothing to justify the appointment of an expert to help the court

understand the issues. Accordingly, Thunderbird's motion for an expert witness (#133) should

be denied.

### B. Discovery and Waiver of Service

Also on April 15, 2011, Thunderbird filed a "compelling motion" (#134) that appears to

be a motion to compel. The motion addresses several issues, but only asks the court to do two

things: (1) vacate the court's previous order staying discovery and order defendants to respond to

the two interrogatories propounded in the motion, and (2) order the remaining defendants be

served by the U.S. Marshal's Service. Approximately one month later, on May 16, 2011,

Thunderbird filed a motion for default judgment (#142) because the Oregon Department of

Justice has failed to return the waiver of service on behalf of all of the named defendants. This

motion reiterates the same waiver of service arguments made in the April 15, 2011, motion.

With regard to the discovery issues, Thunderbird alleges that defendants have refused to

comply with discovery, and he propounds two interrogatories for which he asks the court to lift

the stay and require the defendants to answer. On March 4, 2011, this court stayed discovery

pending the resolution of the motion to dismiss because discovery is not necessary at this stage,

except for discovery pertaining to the issues presented in the motion to dismiss, namely Thunderbird's failure to exhaust his administrative remedies.  Nothing has changed that would prompt the court to reconsider this ruling.  The interrogatories propounded in Thunderbird's motion do not specifically relate to his failure to exhaust his administrative remedies. Consequently, the motion should be denied to the extent that it seeks to lift the stay on discovery.

Regarding waiver of service, Thunderbird asks the court to serve the following individuals with a summons, or in the alternative, enter default judgment against them: Bassett, Simmons, G. Lyltes, Patrick, Merritt and Gross.  Officer Bassett is not named as a defendant in the second amended complaint, so the court declines to serve him with a summons.  On April 5, 2011, defense counsel waived service on behalf of all defendants except G. Lyltes, Simmons, Patrick, Merrit, Bulison, and Gross.  Defense counsel filed an additional waiver of service on behalf of G. Lyltes on April 27, 2011, but declined to waive service on behalf of named defendants Simmons, Patrick, Merrit, Bulison, and Gross.  As previously noted, Thunderbird agreed to abandon his claim against named defendant Bulison, leaving only Simmons, Patrick, Merrit, and Gross unserved.

As discussed above, Thunderbird has failed to allege even general allegations to support any claims against Patrick, Merrit, and Gross.  Because the court recommends their dismissal, it is not necessary to direct the U.S. Marshal's Service to serve them at this time.  While Thunderbird has alleged sufficient personal involvement for nurse Simmons, he failed to fully exhaust his claims against her prior to filing this action, and so it is not necessary for her to be served in at this time.

In light of the foregoing, Thunderbird's compelling motion (#134) and motion for default

judgment (#142) should be denied  The court should not lift the stay on discovery not specifically

pertaining to the issues presented in the motion to dismiss, and should not enter default judgment

against any of the named defendants at this time.

## RECOMMENDATION

For the reasons set forth above, defendants' motion to dismiss (#110) should be granted

in part and denied in part.  The case should  proceed on the following claims:

> (1)  Thunderbird's Eighth Amendment § 1983 claim against Dr. Gulick,
> sued in his personal capacity, based upon the following actions:

>> (A) his reduction of Neurontin in December 2007;

>> (B) his prescription of Propranol in April 2008; and

>> (C) his refusal to reasonably accommodate Thunderbird's requests
>> for sweat pants in February 2008.

> (2)  Thunderbird's Eighth Amendment § 1983 claim against Dr. Gulick,
> sued in his personal capacity, based upon the deprivation, denial, or
> confiscation of his tinted eyeglasses in February 2008.

All remaining claims and defendants should be dismissed.

Thunderbird's motion for an expert (#133), compelling motion (#134), and motion for

default judgment (#142) should be denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation.  If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment

DATED this 28th day of June, 2011.

Paul Papak
United States Magistrate Judge